## THE COMMISSIONERS OF CAMBRIDGE *vs.* THE CAMBRIDGE WATER CO.

*Municipal Corporations—Power to Impose License Fees—Charter of Cambridge.*

A municipal corporation is not authorized to impose license fees or taxes upon particular trades or industries, unless the power so to do has been conferred upon the municipality by the State.

The Charter of Cambridge empowered the Commissioners to require licenses to be obtained by the parties therein enumerated carrying on certain designated industries.    Water companies and water-plugs are not mentioned in this enumeration.    Another section of the charter conferred the power to regulate water-pipes, plugs, etc.    An ordinance of Cambridge required all parties using or maintaining fire-plugs in any street of the town to pay annually a certain fee for each plug.    *Held*, that this ordinance is invalid, because the power to impose a license fee upon parties maintaining fire-plugs was not given to the municipality either expressly or by implication, and that the tax is not a regulation of water-pipes or an exercise of the police power.

Appeal from the Circuit Court for Dorchester County (HOLLAND, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Clement Sullivane* and *J. Watson Thompson*, for the appellant.

*W. Laird Henry* and *F. H. Fletcher* (with whom was *Phillips L. Goldsborough* on the brief ), for the appellee.

Schmucker, J., delivered the opinion of the Court.

The Commissioners of Cambridge, a municipal corporation, sued the Cambridge Water Company in *assumpsit* for money claimed to be due from the company to the Commissioners for unpaid license fees upon fire-plugs. The defendant filed three pleas to which the plaintiff demurred. The Court overruled the demurrer and the plaintiff declining to answer further, final judgment was entered for the defendant from which the plaintiff appealed.

The ordinance on which the plaintiff relied in asserting its claim requires all persons, using or maintaining fire-plugs, telephone poles or other structures therein mentioned, in any of the streets or alleys of the town of Cambridge to annually, during the month of November, file with the Town Clerk and Treasurer a list of all such plugs, &c., and pay to him during the month of December a fee of two dollars for each plug, &c. The ordinance also imposes a penalty upon owners of plugs, &c., who fail to comply with its provisions.

The present case was brought to the July Term 1903, and the declaration alleged that the defendant on or before the first day of November, 1902, and ever since then had used and maintained thirty-six fire-plugs on the streets of Cambridge but had wholly failed to file a list thereof with the Town Clerk and Treasurer or to pay the fee of two dollars per plug or otherwise to comply with the terms of the ordinance. We do not deem it necessary to discuss the several matters set up in defense of the action by the pleas, because the filing of the demurrer to them requires us to examine all of the pleadings and render judgment against the party committing the first substantial error, and such an examination discloses a material defect in the declaration.

The allegations of that instrument, even when aided by the Act of 1900, ch. 339, reincorporating the plaintiff of which as a Public Local Law the Court must under the ruling made in *Sly-mer* v. *The State*, 62 Md. 242, take judicial notice, fail to show that the plaintiff was invested with power to lawfully enact the ordinance requiring the payment of the fees for the recovery of which the suit was instituted.   The fees which this ordinance attempts to impose upon the owners of the structures therein enumerated are plainly not ordinary taxes levied upon duly assessed property in proportion to its assessed value. They are conceded in the briefs of counsel for both parties to be license fees.

The authorities generally hold that the power to impose license taxes or fees upon persons or corporations engaged in the pursuit of a particular occupation is not inherent in municipal corporations and will never be held to exist unless it has been conferred by the State upon the municipality either in express terms or by necessary implication.   1 *Dillon on Mun. Corps.*, sec. 361; *Horr & Bemis on Mun. Ord.*, sec. 256; *McQuillan on Mun. Ord.*, sec. 256; *Fowle* v. *Alexandria*, 3 Pet. 398; *Wilkie* v. *Chicago*, 188 Ill. 450; *Delcambre* v. *Clere*, 34 La. Ann. 1050; *Shuman* v. *Ft. Wayne*, 127 Ind. 109; *Danville* v. *Shelton*, 76 Va. 325; *Am. & Eng. Encycl.*, 2 ed., vol. 21, p. 782–3.   In *State* v. *Rowe*, 72 Md. 548, this Court held invalid an ordinance of the Mayor and City Council of Baltimore providing that no person should be permitted to use Centre Market for the sale of fish and crabs without first obtaining a license therefor from the clerk of the market.   It was sought to uphold the ordinance as a legitimate exercise of the power conferred upon the city by Art. 4, secs. 671 and 672 which authorized it "*to erect and regulate markets*" and "lease, sell or dispose of the stalls and stands in any market in any manner and for any term it might think proper."   The Court in the opinion in that case say: "It is well established law that municipal authorities can exercise no powers which are not in express terms or by fair and reasonable intendment conferred on them.   In *St. Mary's Indust. School* v. *Brown*,

45 Md. 332, this Court adopts the language of the Supreme Court of the United States in *Minturn* v. *Larue*, 23 How. 435, that 'Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public.' It must be by express grant or fair and reasonable intendment that a municipal corporation can get authority over the rights or property of the citizen else 'the trades and business of the people would be at the mercy and be dependent upon the caprice of those who might exercise municipal power instead of being regulated by the general law of the land.' And 'it is the plain duty of the Courts to see that the corporate authorities do not transcend the authority delegated to them.' *State* v. *Mott*, 61 Md. 303; *Vansant's case*, 59 Md. 334." It was further said in that opinion that the power "*to regulate the markets*" given by the statute law to the city would "only be held to intend to give reasonable police power in reference thereto," and did not authorize the exaction of a license tax.

There is no element of regulation in the provisions of the ordinance now under consideration. It exacts the license fee as a condition precedent to the right of the plugs to exist and authorizes the town bailiff to remove them if the fee be not paid. Nor can it be successfully contended that the exacting of this license fee is a legitimate exercise of the police power as has been held in some cases in reference to licensing certain occupations which from their nature might injuriously affect the public safety or the public health or tend to create nuisances. It cannot be seriously contended that maintaining fireplugs is such an occupation or that the ordinance now under consideration was enacted to avert any such danger.

The Act of 1900, ch. 339, which constitutes the Charter of Cambridge is a long one and goes into great detail in the classification and description of the powers conferred upon the municipality. Section 59 confers power to pass all ordinances necessary for purposes enumerated in thirteen sub-sections the last of which is to regulate water-pipes, hydrants and plugs, &c., &c. Section 70 confers power to open, close, extend, widen, keep in repair, &c., streets, lanes and alleys. Section

75 deals specifically with the subject of licenses. It empowers the municipality "to require licenses or permits to be obtained by the parties or persons hereinafter enumerated" and then in twenty-three sub-sections specifically describes the persons or corporations of whom the procuring of a license may be re-required, and designates them by the occcupations in which they are engaged. Neither water companies nor water-plugs appear either expressly or by any fair or reasonable intendment in any one of these twenty-three sub-sections. *Expressio unius est exclusio alterius.*

The case of *Mason* v. *Cumberland*, 92 Md. 451, relied on by the appellant turned upon the validity of a municipal ordinance requiring persons driving wagons or other vehicles on the streets to take out a license, but in that case it appeared that the city of Cumberland was expressly authorized by the Act of 1898, ch. 158, "to *license, tax and regulate wheeled vehicles.*" In the case of *The Postal Telegraph Co.* v. *Baltimore*, 79 Md. 502, also relied on by the appellant a tax of two dollars per pole imposed by a municipal ordinance of Baltimore City upon the Telegraph Company was upheld upon the ground that the city, which owned and had complete control over its streets that were very valuable, might reasonably charge the amount of the tax as compensation for the *use and occupation* of the portions thereof covered by the telegraph poles. The Court in that case say "The City ordinance does not exclude the Telegraph Company from the use of the streets as post roads; on the contrary it recognizes such use and exacts compensation therefor." There is nothing in the present record to indicate that the appellant has the same measure of ownership and control of the highways passing through it as the city of Baltimore has acquired over its streets.

The action of the Circuit Court for Dorchester County in overruling the plaintiffs' demurrer, and upon its refusing to answer further entering up judgment for the defendant for costs must be affirmed.

*Judgment affirmed with costs.*

(Decided June 9th, 1904.)