714 A.2d 182

**BOARD OF COUNTY COMMISSIONERS OF CECIL COUNTY, Maryland**

v.

**R & M ENTERPRISES, INC.**

No. 117, Sept. Term, 1996.

Court of Appeals of Maryland.

July 30, 1998.

542

Keith A. Baynes, Elkton, for appellant.

David H. Parrack (Leonard E. Wilson, on brief), Elkton, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, RAKER and WILNER, JJ.

ELDRIDGE, Judge.

■ This case presents the question of whether the Board of County Commissioners of Cecil County has the authority to adopt a licensing fee scheme for recreational vehicle parks,

---

* Karwacki, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of the opinion.

campgrounds and tourist camps. We shall hold that it does not.

## I.

On January 2, 1996, the Board of County Commissioners of Cecil County adopted an ordinance providing for the licensing of recreational vehicle parks, campgrounds and tourist camps, by amending the Cecil County Code to add a new chapter 152. Section 152–2 of the new chapter requires

"[t]he owner/operator of every recreational vehicle park, campground and tourist camp in Cecil county [to] obtain an annual license to operate from the Department of Permits and Inspections."

Under § 152–3, the Board of County Commissioners is authorized to set by resolution the amount of the annual license fees. Pursuant to § 152–3, the Board subsequently enacted a resolution to establish the amount of the license fees to be charged under Chapter 152. Under this resolution, the fees to be charged were as follows: (1) $50.00 for each site to be used between April 1 and October 31; (2) $240.00 for each site to be used beyond the April 1–October 31 season. Finally, § 152–5 imposes fines for violations of the license requirement, stating as follows:

"Any owner/operator of a recreational vehicle park, campground or tourist camp found to be operating such recreational vehicle park, campground or tourist camp without a current, valid license in violation of this chapter, shall be liable for a fine of not more than Five Hundred Dollars ($500.00) for each unlicensed site within the recreational vehicle park, campground or tourist camp, and in addition, shall pay all fair and reasonable costs incurred by the County in its enforcement of this chapter including but not limited to attorneys fees, inspection fees and court costs. Each day that a violation or operation continues/exist [sic] shall be deemed a separate offense...."

In enacting the ordinance, the Board specifically relied upon Maryland Code (1957, 1998 Repl.Vol.), Art. 25, § 3(i), for its authority. The preamble to the ordinance states:

"WHEREAS, Article 25, Section 3(i) authorizes the Board of County Commissioners of Cecil County to license and regulate the construction, operation and location of trailers and tourist camps outside the limits of incorporated towns and cities ..."

Article 25, § 3, of the Maryland Code states, in pertinent part, as follows:

"The county commissioners of each county in this State, in addition to, but not in substitution of, the powers which have been or may be granted them, have the following express powers.

\* \* \*

"(i) *Trailers and tourist camps.*—To license and regulate the construction, operation and location of trailers and tourist camps outside the limits of incorporated towns and cities."

After the adoption of Ch. 152 and the license fee resolution, the county director of permits and inspections sent a letter regarding the fees to R & M Enterprises which owns and operates a recreational vehicle park consisting of 537 recreational sites on approximately eighty acres in Cecil County. Upon receipt of the letter, R & M filed in the Circuit Court for Cecil County a complaint for a declaratory judgment and an injunction against the County Commissioners. Although the County agreed not to take any action to collect the license fees from R & M during the pendency of the suit, the circuit court issued an interlocutory injunction enjoining the County from collecting the license fees pending the determination of the merits of the action.

Thereafter, the circuit court declared that Cecil County was without authority under Art. 25, § 3(i), to enact the licensing fee ordinance. The court permanently enjoined the County from collecting, or attempting to collect, the license fees. Cecil County appealed to the Court of Special Appeals, and

this Court issued a writ of certiorari prior to consideration of the case by the Court of Special Appeals. *Cecil County Comm'rs v. R & M Enterprises,* 344 Md. 396, 687 A.2d 255 (1997).

## II.

■ It is clear, as the County now concedes, that the Cecil County Commissioners have no power under Art. 25, § 3(i), to enact the recreational site license fee. Article 25, § 3, enumerates certain specific powers held by county commissioners throughout the State. As noted previously, § 3(i) grants county commissioners the power to license the operation of trailers and tourist camps. Assuming *arguendo* that § 3(i) would authorize the type of fee here involved,[1] the Cecil County Commissioners received no grant of power from § 3(i). Art. 25, § 3(a)(2)(iv), specifically excepts Cecil County from the enumerated powers granted by § 3, stating:

"The following counties are excepted from these express powers.

\*　　\*　　\*

"(iv) Cecil County; included, however, in subsections (*l*), (s–1), (t)(3) and (t–1)."

Thus, the Cecil County Commissioners have no authority under Art. 25, § 3(i), to enact the subject ordinance.

Despite the fact that the ordinance and resolution passed by the Cecil County Commissioners imposing the license fees specifically invoked § 3(i) as the source of the power to do so, and despite the County's present concession that the Commissioners had no such power under that section, the County still maintains that the Commissioners had the authority to enact this ordinance.

The County first points out that Art. 25, § 6, states that § 3 is "intended to supplement or to supply authority in the

---

1. In this connection, *see, e.g., Campbell v. City of Annapolis,* 289 Md. 300, 304–305, 424 A.2d 738, 741 (1981); *City of Baltimore v. Canton Co.,* 186 Md. 618, 631–632, 47 A.2d 775, 781 (1946).

county commissioners" and should not "in any manner be considered a limitation or restriction on any existing power and authority granted the county commissioners of any county. . . ." Thus, according to Cecil County, if a basis for the licensing fee ordinance can be found in another enactment of the General Assembly, the fact that Cecil County is specifically excepted from the specific grant of power to license trailers and tourist camps in § 3(i) should not matter. The County invokes two provisions in the Maryland Code, Art. 25, § 2, and Art. 24, § 9–401, which it believes provide a basis for the licensing fee scheme.

■ Before turning to a consideration of these two sections, we preliminarily note that (*Controller v. Pleasure Cove,* 334 Md. 450, 463–464, 639 A.2d 685, 692 (1994)),

"[a]s subdivisions of the State, counties do not have inherent taxing authority; their power to tax depends upon the grant of authority from the State. . . . Courts strictly construe the delegation of taxing power to a county."

*See also, e.g., City of Annapolis v. Anne Arundel County,* 347 Md. 1, 10, 698 A.2d 523, 527 (1997); *Waters v. Montgomery County,* 337 Md. 15, 19, 650 A.2d 712, 713 (1994). This principle of strict construction is fully applicable to license fees. *Cambridge v. Water Co.,* 99 Md. 501, 503, 58 A. 442, 443 (1904).

Article 25, § 2, of the Maryland Code states as follows (emphasis added):

"(a) [The county commissioners] shall also in their respective counties have control over all the public roads, streets and alleys, except in incorporated towns in their respective counties, and make such rules and regulations for repairing, cleaning, mending and perfecting the same, and providing for the payment of the cost of the same, as they may deem necessary; they shall also have power, by resolution, to *regulate,* except in incorporated towns in their respective counties, the parking of vehicles on the public highways, provided appropriate notice thereof is given to the public by posting or otherwise, the location and construction of fire

hydrants, *the construction or establishment of trailer camps,* the construction, maintenance, repair and cleaning of sidewalks, and any person violating any regulation adopted pursuant to the authority conferred by this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not exceeding $100 for any such violation; they may make all necessary rules and regulations for allowing and paying bounties for the killing of hawks, owls, crows, minks, foxes, wildcats and other and like destructive and harmful wild animals and birds."

Except for a different maximum fine in Calvert County, § 2 has no exceptions and appears to be applicable to all county commissioners in the State. Cecil County argues that § 2's grant of authority to "regulate . . . the construction or establishment of trailer camps" is broad enough to authorize the licensing fee provisions at issue in this case. The County's argument fails for several reasons.

■ First, the plain language of § 2 undermines the County's contention. Section 2 empowers a county only to *regulate* the *construction* or *establishment* of trailer camps. The grant to local governments of the power to "regulate" does not include the authority to impose license fees of the type here involved. *City of Baltimore v. Canton Co.*, 186 Md. 618, 631–32, 47 A.2d 775, 781 (1946); *Cambridge v. Water Co., supra,* 99 Md. at 504, 58 A. at 443; *State v. Rowe,* 72 Md. 548, 20 A. 179 (1890).

■ Furthermore, the license fees here are not related to the construction or establishment of trailer camps. "Construction" means "the act of putting parts together to form a complete integrated object," while "establishment" means "the act of bringing into existence, creating, founding, originating, or setting up." *Webster's Third New International Dictionary* 489, 778 (1981). As this Court has repeatedly emphasized, "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647

A.2d 1204, 1206–1207 (1994). *See also, e.g., Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128. 1130–1131 (1998); *Briggs v. State,* 348 Md. 470, 477, 704 A.2d 904, 908 (1998); *Philip Electronics North America v. Wright,* 348 Md. 209, 216–217, 703 A.2d 150, 153–154 (1997); *State Assessments v. Park & Planning,* 348 Md. 2, 11 n. 9, 702 A.2d 690, 695 n. 9 (1997), and cases there cited. The statute is unambiguous. While Art. 25, § 2, may authorize a county to regulate the particulars of when, where and by whom a trailer camp may be founded and built, nothing in the plain meaning of either "construction" or "establishment" suggests an ongoing licensing fee mechanism such as that adopted by the Cecil County Commissioners.

Another reason for rejecting Cecil County's argument is that the County's interpretation of Art. 25, § 2, would render Art. 25, § 3(i), superfluous. If all county commissioners have the authority to adopt licensing and fee provisions for trailer parks under § 2, then there is no need for the more specific authorization to "license and regulate the . . . operation . . . of trailers and tourist camps" contained in § 3(i). To interpret § 2 in the manner suggested by Cecil County would be a "violation of the principle that a court should not 'interpret a statutory scheme so as to render any part of it meaningless or nugatory.'" *Gisriel v. The Ocean City Elections Board,* 345 Md. 477, 492, 693 A.2d 757, 764 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998), quoting *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 180, 680 A.2d 1052, 1065 (1996), and cases there cited. *See also, e.g., Hyle v. MVA,* 348 Md. 143, 149, 702 A.2d 760, 763 (1997); *State v. Harrell,* 348 Md. 69, 80, 702 A.2d 723, 728 (1997); *County Commissioners v. Bell Atlantic,* 346 Md. 160, 178, 695 A.2d 171, 180 (1997).

Moreover, there is legislative history which indicates that § 3(i) was adopted specifically to authorize some licensing schemes because they were not authorized under the more general grant of power in § 2. According to a 1944 Research Report by the Research Division of the Legislative Council of Maryland, prepared pursuant to a 1943 Senate Resolution, Art. 25, § 3(i), was proposed to broaden county commission-

ers' authority with regard to trailer camps. The report states as follows (*Maryland Legislative Council Research Report No. 23, Local Government: A Comparative Study* at 36–37 (1944) (emphasis added)):

> "It is also suggested that the commissioners be authorized "[t]o license and regulate the construction, operation and location of trailer and tourist camps outside the limits of incorporated towns and cities.
>
> "This power *was partly given* to the commissioners by ch. 253 of 1943 (amending Art. 25, sec. 2 of the Annotated Code), permitting them 'by resolution, to regulate, except in incorporated towns in their respective counties . . . ., the construction or establishment of trailer camps. . . .' Also, since 1937 anyone seeking to establish, maintain or operate a tourist camp with cabins for hire, outside the limits of an incorporated town, must secure a permit from the commissioners, though this requirement applies only to Caroline, Carroll, Cecil, Frederick, Howard, Somerset, Talbot, Wicomico, and Worcester.
>
> "The proposal above *includes a definite power of licensing,* covers location and manner of operating, and would apply throughout the State, thus making it a *broader grant of power than exists at present.*"

Thus, according to this report, § 3(i) was proposed for the specific purpose of granting counties the authority to regulate and license the operation of trailer camps, which authority they did not have under § 2.[2]

---

2. Furthermore, even if we had agreed with Cecil County that § 2 authorized some sort of licensing mechanism, the scheme adopted by the Cecil County Commissioners would not be authorized. As discussed earlier, § 152–5 of the ordinance adopting the licensing fee plan states that anyone violating the ordinance "shall be liable for a fine of not more than Five Hundred Dollars ($500.00) for each unlicensed site within the recreational vehicle park, campground or tourist camp, and in addition, shall pay all fair and reasonable costs incurred by the County in its enforcement of this chapter including but not limited to attorneys fees, inspection fees and court costs." This provision provides for a penalty which exceeds that which is authorized for violations of regulations adopted pursuant to the authority granted under Art. 25,

■ Finally, Cecil County argues that the ordinance is authorized under Art. 24, § 9–401, of the Maryland Code. Section 9–401(a–2)(1) authorizes counties to impose (emphasis added)

"a tax *on the amount paid for:*

"(i) The rental, leasing, or use of any space, facilities, or accommodations for a recreational vehicle or camping shelter in a trailer park or mobile home court or park, regardless of the period of occupancy; or

"(ii) The providing of any services by a trailer park or mobile home court or park in connection with the rental, leasing, or use of any space, facilities, or accommodations for a recreational vehicle or camping shelter."

In the case at bar, the County is not imposing a tax on the amount paid for the rental of the sites within a trailer park. Rather, it is charging a fee for the existence of the space itself. Under the ordinance and resolution as written, a trailer park owner would be required to pay the license fee for each site within the park, even if a particular site was never rented during the whole season. The fee is similar to a property tax on each site. Such a fee clearly is not authorized under § 9–401.

Furthermore, § 9–401(a–2)(2) states that "[t]he rate of the tax authorized under this subsection may not exceed 3% of the amounts subject to the tax." Thus, any tax collected under § 9–401 must be calculated in relation to the amount paid for the rental of the site and may not exceed three percent of that amount. The license fee enacted by the Cecil County Commissioners, however, is not calculated in relation to any amounts paid by patrons of the trailer camp, and may greatly exceed three percent of amounts paid to rent a particular site if that site is rented infrequently during the tourist season.

---

§ 2. Under § 2, "any person violating any regulation adopted pursuant to the authority conferred by this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined *not exceeding $100* for any such violation." (Emphasis added.) The penalty provision of the ordinance clearly goes beyond § 2's authorization.

Therefore, we hold that the Cecil County Commissioners were without authority under either Art. 25, § 3(i), or Art. 25, § 2, or Art. 24, § 9–401, to adopt the trailer park licensing fee scheme contained in Ch. 152 of the Cecil County Code and the implementing resolution.

*JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AFFIRMED. APPELLANT TO PAY THE COSTS.*