793 A.2d 561

Martinez R. BROWN,

v.

STATE of Maryland.

No. 80, Sept. Term, 2001.

Court of Appeals of Maryland.

March 7, 2002.

Nancy S. Forster, Deputy Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Sarah Page Pritzlaff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

Martinez R. Brown, petitioner, was convicted, after a jury trial in the Circuit Court for Baltimore City, of second degree assault, wearing and carrying a handgun, and being a felon in possession of a handgun. He was sentenced to various concurrent and consecutive periods of incarceration. His convictions were affirmed by the Court of Special Appeals. We granted his Petition for Writ of Certiorari on October 12, 2001. *Brown v. State*, 366 Md. 246, 783 A.2d 221 (2001).

Petitioner presents one question for our review:

"Is it error for a trial judge to refuse to allow the defense, during its case in chief, to call a witness whom the court deems to lack credibility based on testimony given by that witness during a hearing out of the jury's presence?"

We will hold that under the facts of this case, it was error, and we will reverse.

## I.  Facts

### a.  The Arrest

Police officers in Baltimore City received dispatches that there were "armed persons, people armed with guns" in the 2300 block of Biddle Street in the early morning hours of November 6, 1999.  They were also furnished with descriptions of two persons who allegedly had the guns.  Two officers responded to the location.  There they observed four individuals; two matched the descriptions that had been furnished to the officers.  Petitioner was not one of the individuals who matched the descriptions.

All of the individuals were ordered to show their hands and to get on the ground.  Petitioner ran, instead of complying with the officers' commands.  He was chased by several officers (additional officers had arrived on the scene).  One officer caught petitioner and pulled him to the ground where the two scuffled.  Petitioner retrieved a gun from his waistband and there was a struggle for the gun, with the officer knocking the gun from petitioner's hand.  Other officers then helped subdue petitioner.

### b.  The Sequestration Hearing

During a pre-trial suppression hearing, the witnesses had been sequestered.  After the suppression hearing, Ms. Mazahn, petitioner's mother, informed petitioner's counsel that during a recess in the suppression hearing she had overheard several officers discussing their testimony.  At a hearing in regards to whether the sequestration order had been violated, which was held after the trial had started, but out of the presence of the jury, Ms. Mazahn stated that after Officer Clinedinst had testified in the suppression hearing, she overheard him and Officer Boyd talking in the hallway.  One of them, according to Ms. Mazahn, stated:  " 'Man, you got to say I said he was arrested right here, "A," not at "B," . . . .' " Ms. Mazahn said that the other officer responded:  " 'Well, okay, man.  No problem.  No problem' . . . ." Although the record is not completely clear, Ms. Mazahn also apparently stated that

the exchange between the officers included one telling the other " '[m]an, you can't say that because I said Mr. Brown was arrested right here.' " According to the witness, the officer then began to write on a piece of paper to illustrate what "right here" meant.

In the hearing as to whether the sequestration order had been violated, the State proffered that the officers would deny that the conversation had taken place. Petitioner's counsel stipulated that the officers would so testify. At the conclusion of the hearing on the alleged violation of the sequestration order, the trial judge found that the sequestration order had not been violated, stating: "[H]er testimony made absolutely no sense. The Court so holds, no violation of the sequestration rule, and that's that."

### c. The Issue of Credibility

During closing argument, the State said to the jury, in relevant part:

> "[State]: . . . The testimony of Officers Clinedinst, Guizzotti, Young, and Boyd. Those four people's testimony are evidence that you have to evaluate. . . .

> . . .

> " . . . And in the rigorous cross-examination that each one of those officers was exposed to . . ., they were asked all kinds of details and you've got to figure out whether they're lying or they're telling the truth.

> . . .

> " . . . [S]ee, that corroborates what every one of those cops told you about the radio call *because they all said the same thing.* . . .

> . . .

> "Young and Boyd tell you the same story. They take off. . . . This is Boyd's drawing. . . .

. . .

"And this evidence supports everything that those police officers told you.

. . .

"All of this evidence corroborates itself. Each officer corroborates the other." [Emphasis added.]

In petitioner's closing argument, his counsel took the primary position that it was the inconsistencies in the evidence that created a reasonable doubt as to petitioner's guilt, saying, in part:

"[The State's Attorney] seems to feel that the inconsistencies just mean they're little mistakes. Those inconsistencies *add up. . . . Every little hole you find in this case leads to a bigger hole. . . .*

"Just one inconsistency? Oh, big deal. . . . [W]hen you have inconsistency after inconsistency, you have a problem with the case.

". . . I'm not saying the officers are lying. . . . The State is coming in here with a very serious accusation and they want you to convict on proof that is not standing up, that's not meshing together.

. . .

"But if you're looking at this and every time you think you have-you know, you know what is going on, another inconsistency pops up, something that doesn't make sense pops up, then the State has not proven its case and you have to find Mr. Brown not guilty." [Emphasis added.]

The State in its final closing argument, responded, in relevant part:

"You saw the cops testifying. They don't remember all the details. . . . They're not machines, but in this case, fortunately, they were professionals that restrained themselves and nobody is dead, thank God.

. . .

"Common sense. If you follow what [defense counsel] is asking you to do with common sense, the holes in the nylons and the ponds that are growing from the drops of water and all that business, what *she wants you to believe is that these police officers are conspiring against him.* Why? Don't they have enough to do? . . .

"Do you think, based on the way you saw these police officers handle themselves, that they're interested in conspiring to get him . . . ?" [Emphasis added.]

It is clear from the arguments of both parties that the credibility of the various officers was a key element in petitioner's attempts to defend himself. It is also clear that the State understood issues of credibility to be a key element of the defense.

### d. Rulings

Near the end of the hearing on the alleged violation of the sequestration order, petitioner's counsel attempted to get permission to call Ms. Mazahn as a witness before the jury in the trial in chief in respect to the officers' credibility, to testify as to what she alleged she had overheard the officers saying in the hallway during the suppression hearing. Once it became obvious that the trial court was not going to strike the testimony of the police officers, petitioner's counsel stated to the court: "The only other suggestion I have, Your Honor, is to allow me to call Ms. Mazahn as a defense, you know, call her as a defense witness regarding the fact, you know, to that one statement, to that one statement she heard." The complete exchange was as follows:

"THE COURT: Before the jury?

"[DEFENSE COUNSEL]: Before the jury.

"THE COURT: How in the world could that possibly be relevant—

"[DEFENSE COUNSEL]: I think it's relevant because it goes to their credibility.

"THE COURT: Well, if you take her testimony, the rambling nature thereof, it's hard to believe and it doesn't really make any sense that they would be trying to coordinate an irrelevant point.

. . .

"THE COURT: Based upon that, the Court holds there was no violation of the sequestration rule, period. . . . [H]er [Ms. Mazahn's] testimony made absolutely no sense. The Court so hold[s], no violation of the sequestration rule, and that's that."

It is clear that the trial judge, in his ruling at this point, did not realize that the question then before him was whether Ms. Mazahn was going to be permitted to testify before a jury as to what she alleged she had heard, not whether the officer's testimony would be stricken for a violation of the sequestration order. Later, after the State rested and the motion for judgment of acquittal at the close of the State's case was denied, petitioner's counsel again addressed the court attempting to get permission to call Ms. Mazahn in the defendant's case:

"[DEFENSE COUNSEL]: . . . Actually, Your Honor, let me just say this point. Based on the hearing we had yesterday on the violation of the sequestration order, I would want to put Ms. Loretta Mazahn on to show that there was a—not to show that for the truth of the matter that the officers—there was a violation of the sequestration order—well, the credibility of the—let me put it this way. I would want to put her on to show the credibility of the officers is at stake. Based on what she testified to, it is clear that at least Officer Clinedinst was discussing the testimony with some other person.

"THE COURT: The Court does not find that to be true and does not find that to be in any way credible and does not find a violation of the sequestration rule, and your motion is denied."

At this point, the only request before the court was that defense counsel wanted to present Ms. Mazahn in the trial itself to challenge the credibility of the officers, not to challenge whether the officers had violated the sequestration order. The trial court's denial of what he called her "motion" was a denial of her right to present Ms. Mazahn as a witness to impeach the credibility of the officers who had already testified. Additionally, it is also clear that her request was denied because the trial judge did not find the testimony of Ms. Mazahn to be "in any way credible." The jury, not the trial judge, was the fact-finder in this case.

## II. Discussion

Whether Ms. Mazahn's testimony is credible in an impeachment context at trial is for the fact-finder, in this case a jury, to determine, unlike the issue of her credibility at a hearing on whether State witnesses have violated a sequestration order, where normally, if not always, a judge is the fact-finder, and thus assesses credibility. In the case *sub judice,* in the context of trial credibility issues, the trial judge's ultimate ruling was beyond his power. He was not the proper trier of fact and assessor of credibility of witnesses at the trial of the case-in-chief. He failed to realize that he was no longer in a hearing on whether a sequestration order had been violated.

We have reiterated, time and again, that defendants are, generally, entitled to present their complete defense. We have said for a hundred years and more that issues of the credibility of witnesses at trial, normally, are for the finders of fact to resolve. We said in *Robinson v. State,* 354 Md. 287, 313–14, 730 A.2d 181, 195 (1999), that:

"In a jury trial, judging the credibility of witnesses is entrusted solely to the jury, the trier of fact; only the jury determines whether to believe any witnesses, and which witnesses to believe. *See also Dykes v. State,* 319 Md. 206, 224, 571 A.2d 1251, 1260 (1990) (requiring the court to 'instruct the jury that it is the sole judge of the facts, the weight of the evidence, and the credibility of the witnesses') . . . . " [Some citations omitted.]

Over a hundred years earlier in *State use of Steever v. Union Railroad Company,* 70 Md. 69, 77–78, 18 A. 1032, 1034 (1889), we said:

"'... [W]hen the evidence given at the trial, with all the inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.' *Schofield v. R.R. Co.*[,] 114 U.S. [615] 618[, 5 S.Ct. 1125, 29 L.Ed. 224]. This ruling was not intended to declare, and cannot be fairly construed to mean, that the court ought to assume the power of judging of the credibility of witnesses, or of deciding on the weight of testimony in cases of discrepancy.... But whatever may be the ruling of courts elsewhere, it has been held in this State, as an axiom of the law, ever since the institution of courts of justice, that it is the exclusive province of the jury to decide on the credibility of witnesses, and to determine the weight of testimony. And by this rule we shall abide."

In the hundred years between *State use of Steever* and *Robinson,* there have been numerous cases confirming that in jury trials the credibility of witnesses is a jury issue.[1] In addition to *Robinson, supra,* these cases include *Pittman v. Atlantic Realty Company,* 359 Md. 513, 754 A.2d 1030 (2000); *Conyers v. State,* 354 Md. 132, 729 A.2d 910 (1999); *Briggs v. State,* 348 Md. 470, 704 A.2d 904 (1998); *Dennard v. Green,* 335 Md. 305, 643 A.2d 422 (1994); *Dawson v. State,* 329 Md. 275, 281, 619 A.2d 111, 114 (1993) ("[W]e are mindful of the respective roles of the court and the jury; it is the jury's task, not the court's, to measure the weight of evidence and to judge the credibility of witnesses."); *Short v. Wells,* 249 Md.

---

1. Of course, during hearings on motions relating to legal issues, such as suppression hearings as to evidence admissibility, initial hearings as to the voluntariness of confessions, or, as in this case, hearings on whether a sequestration order has been violated and thus whether certain testimony should be stricken, the judge, under those circumstances, is the initial, and sometimes final, trier of fact. In such situations, a judge may be the appropriate assessor of a witness' credibility.

491, 497, 240 A.2d 224, 228 (1968) ("[T]he court should have submitted the evidence to the jury to determine the credibility of the witnesses. . . ."); *McKenzie v. State,* 236 Md. 597, 603, 204 A.2d 678, 681 (1964) ("Such matters go to the weight of the evidence and the credibility of the witnesses and these are matters for determination by the jury."); *Ferrell v. State,* 234 Md. 355, 356, 199 A.2d 362, 363 (1964) ("While the versions of the victim and of the appellant differed, the credibility of the witnesses was a matter for the jury to determine."); *Duffin v. State,* 229 Md. 434, 436, 184 A.2d 624, 625 (1962) ("The weight of the evidence and the credibility of witnesses are always matters for the jury to determine when it is the trier of facts."); *Davis v. State,* 229 Md. 139, 141, 182 A.2d 49, 50 (1962) ("[I]t was within the province of the jury to weigh the evidence and judge the credibility of the witnesses."); *Williams v. State,* 228 Md. 356, 179 A.2d 891 (1962); *Meredith v. Director of Patuxent Institution,* 226 Md. 653, 172 A.2d 501 (1961); *Johnson v. State,* 221 Md. 177, 156 A.2d 441 (1959).

In a recent case in which the issue was whether it was proper for a prosecutor to comment in argument that a testifying defendant's credibility was affected by the fact that he had been present in the courtroom during prior testimony, the Supreme Court of the United States reaffirmed that the fact-finder is the proper entity to assess witness credibility, commenting:

"Indeed, in *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), the Court suggested that arguing credibility to the jury—which would include the prosecutor's comments here—is the preferred means of counteracting tailoring of the defendant's testimony. . . . The Court expressed its awareness, however, of the danger that tailoring presented. *The antidote, it said, was not Tennessee's heavy-handed rule, but the more nuanced 'adversary system [, which ] reposes judgment of the credibility of all witnesses in the jury.'* The adversary system surely envisions—indeed, it requires—that the prosecutor be allowed to bring to the jury's attention the danger that the Court was aware of."

*Portuondo v. Agard,* 529 U.S. 61, 70, 120 S.Ct. 1119, 1125–26, 146 L.Ed.2d 47, 57 (2000) (emphasis added) (alteration in original) (some citations omitted).

## Conclusion

In this case, after exercising, appropriately, his powers to assess witness credibility in respect to matters relating to the violations of sequestration orders and motions to strike testimony, the trial judge failed to realize that the matter of the particular witness's testimony had been recast as testimony challenging the credibility of the State's witnesses in the trial in chief, as opposed to its character during the matters relating to legal issues. Because he failed to realize the difference, he strayed into the province of the jury and made credibility assessments of a witness who the defense proposed to present to challenge the credibility of trial witnesses. In doing so, he erred. Considering that the officers' credibility was the primary contested issue in the case, and, further, that both the State's case and the defense's case relied on contrary assessments of that credibility, we cannot say that the error was not prejudicial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR & CITY COUNCIL OF BALTIMORE.**